IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 25, 2018

## STATE OF TENNESSEE v. SHERRY ANASTASIA DODSON

**Appeal from the Criminal Court for Knox County**
**No. 109066     Bob McGee, Judge**

_____

### No. E2017-02480-CCA-WR-CO
_____

On petition for writ of certiorari from the Knox County Criminal Court, the State challenges the order of that court denying its petition to have the appellee, Sherry Anastasia Dodson, declared a Motor Vehicle Habitual Offender ("MVHO"). The trial court erred by concluding that the State was required to proceed via Code section 55-10-618 to have the appellee declared an MVHO in this case and that the State had waived the right to proceed at all by failing to follow the requirements of that section. Accordingly, the judgment of the trial court denying the State's petition to have the appellee declared an MVHO is reversed, and the case is remanded for proceedings on the merit of the State's petition.

**Tenn. Code Ann. § 27-8-101; Judgment of the Criminal Court Reversed and Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Charme P. Allen, District Attorney General; and Greg Eshbaugh, Assistant District Attorney General, for the appellant, State of Tennessee.

Douglas A. Trant and Julia Anna Trant (on appeal), and James Owen (at hearing), Knoxville, Tennessee, for the appellee, Sherry Anastasia Dodson.

### OPINION

By petition filed on October 4, 2016, the State moved the trial court to

declare the appellee an habitual offender under the terms of the Motor Vehicle Habitual

Offenders Act ("the Act"). The petition listed three previous convictions: a September 2016 conviction of driving under the influence ("DUI") with an offense date of June 6, 2016; a September 2016 conviction of DUI with an offense date of March 26, 2016; and a September 2013 conviction of reckless driving with an offense date of October 23, 2012. The petition did not address the application of any particular statute and, instead, cited generally to the Act.

In May 2017, the appellee moved the court to dismiss the petition, arguing that the State had failed to comply with Code section 55-10-618 by failing to advise the appellee within 10 days of her September 19, 2016 guilty pleas that the State intended to have the appellee declared an MVHO. According to her motion, following her pleas, the appellee had applied for and obtained a restricted license, without objection by the State, and had complied with the requirement that she use an ignition interlock device on her vehicle. The appellee argued that the State was required to follow the procedure in Code section 55-10-618 "when the State knows that they're dealing with the third triggering offense." She asserted that, because all of the triggering offenses occurred in Knox County, the State was aware at the time she pleaded guilty that "this was going to be the third triggering offense" and that, as a result, they were bound to follow the mandates of Code section 55-10-618, including the notice requirement.

At the December 2017 hearing on the petition, the State asserted that, following the appellee's September 2016 guilty pleas to two counts of DUI, it had received a request from the Department of Safety to have the appellee declared an MVHO. The State, citing Code section 55-10-606(a), argued that "the State was mandated by statute to . . . file the petition" in this case. Citing Code section 55-10-606(b), the State claimed, "alternatively, that the DA may file a petition upon information from another source." Finally, the State asserted that Code section 55-10-618 was simply another provision that permitted the State to seek an MVHO declaration "as part of the criminal case, as opposed to a separate civil petition."

The trial court found that the Code appeared to provide "two approaches" that the State could follow when seeking an MVHO declaration. The first, designated by the trial court as "a very general approach that covers anybody," flows from a request by the Department of Safety "simply based on the Department of Safety's knowledge of a person's record and their duty to send notice of that to the State." The court determined that "[t]he second procedure is much more specific and applies only to people who are in the process of being prosecuted for a DUI or some offense" that would trigger the MVHO statute. The court held that, although both statutes could be applied to the appellee's case, under the rules of statutory construction, the more specific statute should be applied. The court observed that the State was aware at the time the appellee entered her guilty pleas that she had the requisite number of qualifying convictions and found that

-3-

"when the State failed to make that a part of the prosecution, the State waived their opportunity to proceed along those lines." The court also indicated that the State's failure to proceed with the MVHO declaration as part of its criminal prosecution might implicate principles of due process similar to those impacted by the State's saving back charges. Finally, the court observed that "the proper way to do this was to make this a part of the criminal prosecution and give Ms. Dodson notice of what all was going to happen to her as a result of her violations of the law."

Following the trial court's ruling, the State, cognizant of the fact that it possessed no appeal as of right from the trial court's order, petitioned this court for a writ of certiorari to review the trial court's order. This court granted the State's request, and before this court is the propriety of the trial court's order denying the State's petition to have the appellee declared an MVHO.

Our review of the trial court's order in this case is de novo, with no presumption of correctness afforded to the ruling of the trial court. *See State v. Henderson*, 531 S.W.3d 687, 692 (Tenn. 2017) ("Issues of statutory construction present questions of law which we review de novo, with no presumption of correctness.").

As is applicable in this case, an MVHO is "any person who, during a five-year period, is convicted in a Tennessee court or courts of three (3) or more" qualifying

offenses, including DUI and reckless driving. T.C.A. § 55-10-603(2)(A)(viii), (xi). Code section 55-10-605 imposes upon the Department of Safety a duty to transmit records of conviction "to the district attorney general for the judicial district wherein the individual resides or may be found" when those records "show that an individual has accumulated convictions appearing to warrant proceedings under this part." *Id.* § 55-10-605(b). "Upon receipt of the record referenced in § 55-10-605, it is the duty of the district attorney general forthwith to file a petition against the individual in the court of general criminal jurisdiction for the county in which the individual resides, or may be found." *Id.* § 55-10-606(a).

The State followed the above procedure in this case. Upon receipt of notice from the Department of Safety that the appellee had the requisite number of qualifying convictions, the State filed the petition that is the subject of this appeal. The appellee argues, however, that the State was bound to follow the procedure in Code section 55-10-618 or forfeit the opportunity to have the appellee declared an MVHO.

Code section 55-10-618 provides:

(a) As an alternative to the procedure set out in §§ 55-10-601-
-55-10-617 for declaring a person to be a motor vehicle
habitual offender, the district attorney general may use the

-5-

procedure set out in this section; provided, that at least one (1) of the convictions required by § 55-10-603 of this part occurs on or after July 1, 1995.

(b) If the district attorney general believes that a defendant should be sentenced as a motor vehicle habitual offender in addition to the sentence for the habitual offender triggering offense, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea; provided, that notice may be waived by the defendant in writing with the consent of the district attorney general and the court accepting the plea. This statement, which shall not be made known to the jury determining the guilt or innocence of the defendant on the primary offense, must set forth the nature of the prior applicable convictions, the dates of the convictions and the identity of the courts of the convictions. The original or certified copy of the court record of any prior conviction, bearing the same name as that by which the defendant is charged in the primary offense, is prima facie evidence that the defendant named therein is the same as the defendant

before the court, and is prima facie evidence of the facts set

out therein.

*Id.* § 55-10-618(a)-(b).

The most basic principle of statutory construction is "to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002) (quoting *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)). "Legislative intent is determined 'from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning.'" *Osborn v. Marr*, 127 S.W.3d 737, 740 (Tenn. 2004) (quoting *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000)). "When the statutory language is clear and unambiguous, we apply the plain language in its normal and accepted use." *Boarman v. Jaynes*, 109 S.W.3d 286, 291 (Tenn. 2003) (citing *State v. Nelson*, 23 S.W.3d 270, 271 (Tenn. 2000)). "It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources." *In re Estate of Davis*, 308 S.W.3d 832, 837 (Tenn. 2010) (citing *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998)).

This court has determined that the Act is not ambiguous.  *See State v. William Christopher Davis*, No. E2016-02132-CCA-R3-CD, slip op. at 6 (Tenn. Crim. App., Knoxville, Aug. 24, 2017) ("We also disagree that the act is ambiguous.").  The language of Code section 55-10-606 unequivocally imposes upon the State a duty to act upon receiving notice from the Department of Safety that an individual has the requisite number of convictions to qualify as an MVHO.  *See* T.C.A. § 55-10-606(a); *see also State v. Gipson*, 940 S.W.2d 73, 74-75 (Tenn. Crim. App. 1996).  The plain language of Code section 55-10-618 provides that it is simply "an alternative to the procedure set out in §§ 55-10-601--55-10-617" that the district attorney "may use" so long as other requirements are met.  *See* T.C.A. § 55-10-618(a); *see also State v. William Tony Wright*, No. M2001-01418-CCA-R3-CD (Tenn. Crim. App., Nashville, June 19, 2002); *State v. Sammy L. Golden*, No. 02C01-9611-CR-00393 (Tenn. Crim. App., Jackson, Sept. 10, 1997).  Nothing in either statute supports the trial court's conclusion that the State must follow the provisions of Code section 55-10-618 in all cases when a conviction of the charged offense would constitute a triggering offense under the Act.  The use of the word "may" in Code section 55-10-618(a) indicates that the choice to make the MVHO petition part of the criminal proceeding lies solely within the discretion of the district attorney general.  *See, e.g.*, *Holdredge v. City of Cleveland*, 402 S.W.2d 709, 713 (Tenn. 1966) ("[T]he word 'may' is permissive, and operates to confer a discretion.") (citation omitted)).  We are unwilling to impose a mandatory duty when the legislature has not.  The use of the word "shall" in Code section 55-10-618 does not operate to alter the

-8-

discretionary language in subsection (a) but instead merely indicates that, when the State elects to make the MVHO petition part of the criminal proceeding, it must follow the procedure outlined in subsection (b).

The appellee urges that this interpretation "is in conflict with the intent of the legislature, repugnant to the principle for fairness, and prejudicial to [the appellee's] rights." We reiterate that the language of the Act is plain and unambiguous. "When the statutory language is clear and unambiguous," this court must "apply the plain language in its normal and accepted use," *Boarman*, 109 S.W.3d at 291, rather than defer to "the broader statutory scheme, the history of the legislation, or other sources," *In re Estate of Davis*, 308 S.W.3d at 837.

The appellee also claims that permitting the State to proceed other than via Code section 55-10-618 in this case violates Tennessee Rule of Criminal Procedure 8(a) regarding mandatory joinder of offenses. The rules of criminal procedure, however, do not apply to proceedings under the Act because, as the courts of this state have repeatedly recognized, "the proceedings to revoke or suspend driving privileges are civil in nature and not criminal." *Everhart v. State*, 563 S.W.2d 795, 797 (Tenn. Crim. App. 1978).[1] To

---

[1]    In support of her argument, the appellee points out that proceedings under the Act occur in a court with criminal jurisdiction, that the Act provides for a trial by jury, that the State bears the burden of proof, and that an appeal from the decision of the trial court lies with this court. These arguments were considered and rejected by this court in *Everhart*. *Everhart*, 563 S.W.2d at 796 ("In support of his contention that proceedings under the Motor Vehicle Habitual Offenders Act are criminal in nature rather

the extent that the appellee invokes principles of constitutional due process as a bar to the proceedings in this case, this court has observed that "any complaint about the constitutional validity of the predicate convictions or of the MVHO process must fail. . . . given the civil nature of the proceeding." *State v. Sneed*, 8 S.W.3d 299, 301 (Tenn. Crim. App. 1999).

Accordingly, the judgment of the trial court denying the State's petition is reversed, and the case is remanded for further proceedings on the merit of the State's petition.

---

JAMES CURWOOD WITT, JR., JUDGE

---

than civil, the defendant argues that since the Act expressly bestows trial jurisdiction upon the criminal courts and appellate jurisdiction upon this court, this evinces a legislative intent that proceedings under the act are criminal in nature. We do not agree. The criminal courts and this court already had jurisdiction of criminal cases. The effect of these provisions in the Motor Vehicle Habitual Offenders Act was to bestow upon the criminal courts and this court additional civil jurisdiction that these courts would not have otherwise enjoyed.").